UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-21995-CIV-O'SULLIVAN

[CONSENT CASE]

CROWLEY LINER SERVICES, INC.,

     Plaintiff,

v.

TRANSTAINER CORP.,

     Defendant.

_____/

## ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion for Partial Summary

Judgment and Motion to Dismiss Defendant's Counterclaim (DE # 9, 10/18/06).  The

parties have consented to the entry of final judgment by the undersigned. See Election

of Jurisdiction by a United States Magistrate Judge for Final Disposition of Motions

(DE# 17, 11/6/06) and Election of Jurisdiction by a United States Magistrate Judge for

Trial (DE# 18, 11/7/06). Having carefully reviewed the applicable filings, exhibits,

affidavits and law, it is

**ORDERED AND ADJUDGED**, that Plaintiff's Motion for Partial Summary

Judgment and Motion to Dismiss Defendant's Counterclaim (DE# 9, 10/18/06) is

**DENIED** as more fully explained below.

1

## DISCUSSION

The plaintiff included a Concise Statement of Undisputed Facts pursuant to

Local Rule 7.5 in its Motion for Partial Summary Judgment (DE# 9 at 2-4, 10/18/06). In

its opposition papers, the defendant failed to provide a "single concise statement of the

material facts as to which it is contended that there exists a genuine issue to be tried"

in accordance with Local Rule 7.5(B). Instead, the defendant submitted the "Affidavit of

Jose Wolf" to support its misrepresentation and fraud claims.  Therefore, in accordance

with Local Rule 7.5, the facts set forth in the plaintiff's statement are deemed

undisputed.

In this admiralty suit, the plaintiff seeks $167,381.00[1] in unpaid freight and

related charges[2] pursuant to contracts of carriage, Service Contract # 0505-5283 and

Service Contract # 0505-5292 (collectively "Service Contracts"). The plaintiff is a vessel

owning ocean going common carrier. See Affidavit of Gary Killmer (DE# 9 at ¶ 1,

10/18/06). The defendant is a non-vessel operating common carrier and is referred to

as the "shipper" under the Service Contracts. See Service Contracts, attached as

---

[1] The plaintiff initially sought to recover a total of $169,076.00. See Complaint
(DE# 1 at ¶ 9, 8/9/06). On December 14, 2006, the plaintiff withdrew its claims for
invoices not part of Plaintiff's Motion for Partial Summary Judgment. See Plaintiff's
Reply Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment and
Motion to Dismiss Defendant's Counterclaim (DE# 30 at 1, 12/14/06). Thus, the
plaintiff's entire claim is now limited to $167,381.00.

[2] The term "related charges" includes fuel usage adjustment, gamma ray,
general rate increase, pre-carriage and security. See Affidavit of Gary Killmer (DE# 9 at
¶ 8, 10/18/06).

Exhibit 2 to the affidavit of Gary Killmer (DE# 9, 10/18/06).

The Service Contracts provided for goods exported by the defendant to be shipped from the United States to Central America. See Affidavit of Gary Killmer at ¶ 6-7 (DE# 9, 10/18/06). The subject cargo was shipped between December 16, 2005 and April 24, 2006. All of the services described in the invoices/bills of lading including delivery of the cargo have been performed by the plaintiff. See Motion for Partial Summary Judgment and Motion to Dismiss Defendant's Counterclaim (DE# 9 at 3, 10/18/06). The defendant refused to pay for some of the shipments made pursuant to the Service Contracts. See Defendant's Response to Plaintiff's Reply Memorandum in Support of its Motion for Summary Judgment (DE# 31 at 1, 12/21/06).

The defendant entered into the Service Contracts with the plaintiff based on oral representations made by Rinus Schepen and Elena Jimenez on behalf of the plaintiff. See Affidavit of Jose Wolf, attached as an exhibit to Defendant's Opposition Memorandum (DE# 26 at ¶ 2, 5, 12/7/09). Rinus Schepen and Elena Jimenez represented to the defendant that the carrying costs that would apply to the defendant's shipments would be the same as those applicable to the defendant's competitors. Id. at ¶ 4. In May and June 2005, before the defendant renewed the Service Contract, Elena Jimenez reiterated this representation to the defendant's president at the defendant's Miami office. Id. at ¶ 6.

In March 2006, the defendant discovered that the plaintiff was charging the defendant's competitors $150.00 to $200.00 less per container load and that in some

3

instances, the plaintiff gave credit reimbursements to the defendant's competitors or would charge the defendant's competitors on a basis of a refrigerated container while providing (or moving the competitors' cargo to) dry containers, which require a higher rate under the service contracts applicable to the defendant and its competitors. Id. at ¶ 7.

On August 9, 2006, the plaintiff filed suit against the defendant seeking to recover unpaid freight and related charges. See Complaint (DE #1, 8/9/06). On October 23, 2006, the defendant filed its Amended Answer, Affirmative Defenses and Counterclaim (DE #13, 10/23/06) alleging misrepresentation, fraud and violation of Florida's Deceptive and Unfair Trade Practices Act (hereinafter "FDUTPA").[3] The Court has jurisdiction over the plaintiff's claims pursuant to 28 U.S.C. § 1333 and ancillary jurisdiction over the defendant's counterclaims. See Marine Transp. Services Sea-Barge Group, Inc. v. Python High Performance Marine Corp.,16 F.3d 1133, 1139 (11th Cir. 1994) (holding that "district court had ancillary jurisdiction in admiralty to hear the counterclaim" arising directly from transaction or occurrence in the complaint).

On October 18, 2006, the plaintiff filed the instant Motion for Partial Summary Judgment and Motion to Dismiss Defendant's Counterclaim (DE# 9, 10/18/06). The defendant filed its Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment and Motion to Dismiss Defendant's Counterclaim (DE# 26, 12/7/06) on

---

[3] The defendant's initial Answer, Affirmative Defenses and Counterclaim was filed on September 22, 2006. (DE# 7, 9/22/06).

December 7, 2006. The plaintiff filed its reply brief on December 14, 2006 (DE# 30, 12/14/06). The defendant moved for leave to file a response to the plaintiff's Reply on December 21, 2006 and attached its response. See Defendant's Motion for Leave of Court to File a Response to Plaintiff's Reply Memorandum in Support of Motion for Summary Judgment (DE# 32, 12/21/06). The Court has granted the defendant's Motion for Leave.

## STANDARDS OF REVIEW

### A.    Motion to Dismiss

A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that claimant can prove no set of facts that would entitle it to relief. Bradberry v. Pinellas County, 789 F.2d 1513, 1515 (11th Cir. 1986).  In ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the claimant and take its allegations as true.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). Finally, the issue is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

### B.    Motion for Summary Judgment

The Court, in reviewing a motion for summary judgment, is guided by the standard set forth in Federal Rule of Civil Procedure 56(c), which states, in relevant part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The moving party bears the burden of meeting this exacting standard. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). That is, "[t]he moving party bears 'the initial responsibility of informing the . . . [C]ourt of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" U.S. v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting Celotex, 477 U.S. at 323).  In assessing whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. Batey v. Stone, 24 F.3d 1330, 1333 (11th Cir. 1994). Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain.  Id.  If the record presents factual issues, the Court must deny the motion and proceed to trial. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

Despite these presumptions in favor of the non-moving party, the Court must be mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense to the parties and to the Court occasioned by an unnecessary trial. Celotex, 477 U.S. at 322-323.  Consequently, the non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures.  Id.  As the Supreme Court

6

noted in <u>Celotex</u>:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against the party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

<u>Id</u>.  at 322-323.  Thus, the mere existence of a scintilla of evidence in support of the

non-moving party's position is insufficient. There must be evidence on which the jury

could reasonably find for the non-movant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

242, 251 (1986).

## ANALYSIS

**A.     Motion to Strike the Defendant's Misrepresentation Affirmative Defense and Fraud Counterclaim**

Initially, the plaintiff moved to strike the first affirmative defense

(misrepresentation) and count II (fraud) of the defendant's Answer, Affirmative

Defenses and Counterclaim for failure to comply with Fed. R. Civ. P. 9(b) which

provides that "[i]n all averments of fraud or mistake, the circumstances constituting

fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b) (2006). After the

plaintiff filed its motion to strike, the defendant filed its Amended Answer, Affirmative

Defenses and Counterclaims (DE# 13, 10/23/06) which included additional allegations

supporting its misrepresentation affirmative defense and fraud counterclaim. In its

Reply, the plaintiff withdrew its motion to strike the defendant's misrepresentation

affirmative defense and fraud counterclaim. See Plaintiff's Reply Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment and Motion to Dismiss Defendant's Counterclaim (DE# 30 at 1, 12/14/06). Accordingly, the plaintiff's motion to strike the defendant's misrepresentation affirmative defense and fraud counterclaim is **DENIED as moot**.

**B.     Motion to Dismiss Count III (Violation of Florida's Deceptive and Unfair Trade Practices Act) of the Defendant's Counterclaim**

The defendant claims that the plaintiff violated the FDUTPA, Fla. Stat. § 501.201, et. seq., by engaging in allegedly unconscionable acts and/or unfair or deceptive acts or practices, i.e., "rebating and or crediting competitors of [the defendant] $150.00 to $200.00 per container load" and "in some instances . . . charg[ing the defendant's] competitors on the basis of a refrigerated container (which has less cubic capacity), [and then providing or] mov[ing] the competitor's cargo [to] dry containers, thus providing an advantage to [the defendant's] competitors." See Amended Answer, Affirmative Defenses and Counterclaim (DE# 13 at 6, 10/23/06). The defendant's FDUTPA counterclaim is further premised on representations made by the plaintiff to induce the defendant to enter into the Service Contracts. Id. at ¶ 19.

The plaintiff argues that the defendant cannot meet the statutory requirements to state a claim under FDUTPA because FDUTPA is limited to consumer transactions and does not apply to sophisticated commercial transactions. See Plaintiff's Motion for Partial Summary Judgment and Motion to Dismiss Defendant's Counterclaim (DE# 9 at

8, 10/18/06). The plaintiff relies on <u>Golden Needles Knitting and Glove Co. Inc. v.</u>
<u>Dynamic Marketing Enterprises, Inc.</u>, 766 F.Supp. 421 (W.D. N.C. 1991) (applying
Florida law). In <u>Golden Needles</u>, the court granted summary judgment for the plaintiff
on the defendant's FDUTPA counterclaim finding that the FDUTPA "[wa]s limited to
'consumer transactions' and did not apply to sophisticated commercial transactions." <u>Id</u>.
at 430.

The plaintiff's reliance on <u>Golden Needles</u> is misplaced. <u>Golden Needles</u> was
decided based on an earlier version of the FDUTPA.  Effective July 1, 2001, the Florida
Legislature revised several sections of FDUTPA, including Fla. Stat. § 501.211(2).[4]
That section now reads, in part:

> In any action brought by a person who has suffered a loss as a result of a
> violation of this part, such **person** may recover actual damages, plus
> attorney's fees and court costs as provided. . . .

Fla. Stat. 501.211(2) (emphasis added). In a case interpreting the new FDUTPA
language, this Court held that the Florida Legislature's replacement of the word
"consumer" with the word "person" demonstrated an intent to allow a broader
base of complainants to seek damages.  <u>See</u> <u>Niles Audio Corp. v. OEM Systems</u>
<u>Co., Inc.</u>, 174 F. Supp. 2d 1315, 1319-1320 (S.D. Fla. 2001).  In <u>Niles</u>, a
manufacturer of audio/visual equipment sued competitors and sought both
damages and injunctive relief under FDUTPA. The court held that the plaintiff

---

[4] The amended version of the FDUTPA applies here because the defendant's
FDUTPA counterclaim is based on representations made and actions taken in 2004
and 2005. <u>See</u> Affidavit of Jose Wolf (DE# 26, 12/7/06).

could bring a claim for both damages and declaratory relief. Id. at 1320. "FDUTPA is a consumer protection law intended to 'protect the consuming public **and legitimate business enterprises** from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Merrill Lynch Business Financial Services, Inc. v. Performance Machine Systems U.S.A., Inc., No. 04-60861, 2005 WL 975773 (S.D. Fla. Mar. 4, 2005) (citing Fla. Stat. § 501.202(2)) (emphasis added). Thus, the Court finds no support for the plaintiff's claim that the FDUTPA does not apply to sophisticated commercial transactions.

In its reply, the plaintiff argues, for the first time, that the defendant's FDUTPA counterclaim should be dismissed because it is preempted by maritime law. The defendant's response to the plaintiff's reply does not address this argument.

In support of this argument, the plaintiff cites to a single case, Ingram Barge Company v. Trifinery, Inc., No. 89-04334, 1990 WL 303913 (Tex. Dist. Nov. 29, 1990). In Ingram, the court granted the plaintiff's motion for partial summary judgment on the defendant's counterclaim under the Texas Deceptive Trade Practices Act (hereinafter "TDTPA") finding that its punitive damages provision and its foreseeability standard were incompatible with admiralty and federal common law. The court noted that under the TDTPA, a claimant could recover treble damages if "the deceptive or otherwise prohibited conduct was

committed knowingly." Id. at 8. The TDTPA defined "knowingly" as "actual

awareness of the falsity, deception, or unfairness of the act or practice giving

rise to the consumer's claim." Id. (internal citation and quotation marks omitted).

By contrast, the court noted that punitive damages in maritime cases may be

awarded "when a wrongdoer has acted willfully and with gross disregard for the

plaintiff's rights." Id. at 9 (internal citation and quotation marks omitted). Thus,

the TDTPA's damages provision was in conflict with maritime law. The Ingram

court also found that the TDTPA's foreseeability standard conflicted with

maritime law. "Under the [T]DTPA, a claimant need only find that the alleged act

was a 'producing cause' of damages . . . [which] d[id] not encompass the

element of foreseeability as does proximate cause." Id. Thus, the court held that

the TDTPA was preempted by maritime law.

The Court is not persuaded by the plaintiff's argument because the

defendant's FDUTPA counterclaim is not maritime in nature. It is a compulsory

counterclaim, arising from the same transaction as the subject matter of the

complaint and brought under the Court's ancillary jurisdiction. Accordingly,

maritime law's general prohibition against attorney's fees does not apply and the

defendant can maintain an FDUTPA counterclaim against the plaintiff.

The defendant's FDUTPA counterclaim sounds in tort. See Lipford v. First

Family Financial Services, Inc., No. W2003-01208-COA-R3-CV, 2004 WL

948645, 4 (Tenn. Ct. App. Apr. 29, 2004) (holding that claim was "a tort action

11

based on allegations of fraud and violations of the Tennessee Consumer

Protection Act). The defendant claims that the plaintiff's representatives made

false representations concerning shipping costs for the defendant's competitors

in order to induce the defendant to execute the Service Contracts. See Affidavit

of Jose Wolf (DE# 25, 12/7/06). The defendant also claims that the plaintiff

either provided its competitors with dry containers or moved its competitors'

cargo to dry containers while charging the competitors for refrigerated

containers. Id. at ¶ 7; Amended Answer, Affirmative Defenses and Counterclaim

(DE# 13 at 6, 10/23/06).

"[F]or a tort claim to be cognizable under admiralty jurisdiction, the activity

from which the claim arises must satisfy a location test and it must have

sufficient connection with maritime activity." Alderman v. Pacific N. Victor, Inc.,

95 F.3d 1061, 1064 (11th Cir.1996) (citing Jerome B. Grubart, Inc. v. Great

Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995)). To satisfy the location

test, the tort must have occurred on navigable water or the injury suffered on

land must have been caused by a vessel on navigable water. Jerome B. Grubart,

Inc., 513 U.S. at 534. With respect to the connection test, two issues must be

considered: (1) whether, upon assessment of the general features of the type of

accident involved, the "incident has a potentially disruptive impact on maritime

commerce;" and (2) "whether the general character of the activity giving rise to

the incident shows a substantial relationship to traditional maritime activity." Id.

12

(internal quotations and citation omitted).

In Kuehne & Nagel v. Geosource, Inc., 874 F.2d 283 (5th Cir. 1989), the plaintiff asserted a maritime tort of fraudulent inducement to a contract of affreightment. The Fifth Circuit held that the fraudulent inducement claim did not fall under the district court's admiralty jurisdiction. The Court reasoned:

> "[The defendant's] alleged misrepresentations to the [plaintiff] that induced [the plaintiff] to enter [into] the contracts were made at a [defendant]-sponsored meeting at a hotel in Hamburg, West Germany. Thus, the tortious acts occurred before [the plaintiff] signed the contract. The misrepresentations had their desired "effect" on land when they prompted [the plaintiff] to sign the contracts of affreightment."

Id. at 289.

Similarly, in McAllister Towing & Transp. Co., Inc. v. Thorn's Diesel Service, Inc., 163 F.Supp.2d 1329, 1334 (M.D. Ala. 2001), a third-party plaintiff's "claims for misrepresentation d[id] not satisfy the location requirement because the tort did not occur on navigable waters, but on land . . . [where the third-party defendant] made the alleged misrepresentations that induced [the third-party plaintiff] to enter into the contract from [a] facility in Belle Chase, Louisiana." The court further noted that "[t]he misrepresentations had their desired effect on land when they induced [the third-party plaintiff] to enter into a contract . . . to purchase [] transmission gear. Id.

In the instant case, the alleged FDUTPA violations did not occur on navigable water. Moreover, this is not a case where an injury on land was

caused by a vessel on navigable water. The defendant alleges that the

purportedly false representations made to the defendant by the plaintiff's

representatives occurred at the defendant's Miami office. See Affidavit of Jose

Wolf at ¶ 6.  Although there may be some connection between the alleged tort

and traditional maritime activity, the location test for admiralty jurisdiction is not

satisfied in this case. The defendant's FDUTPA counterclaim is not brought

under the Court's maritime jurisdiction. Accordingly, maritime law and its general

prohibition against attorney's fees does not apply.

Based on the foregoing, the Court finds that the defendant may proceed

with its FDUTPA counterclaim against the plaintiff under the Court's ancillary

jurisdiction.[5] As such, the plaintiff's Motion to Dismiss Count III (Violation of

Florida's Deceptive and Unfair Trade Practices Act) of Defendant's Counterclaim

is **DENIED**.

**C.      Motion to Dismiss the Defendant's Counterclaims on the Basis That
They Should Be Brought Before the Federal Maritime Commission**

The plaintiff also argues that the defendant's claims should be brought

before the Federal Maritime Commission (hereinafter "FMC"). See Plaintiff's

Motion for Partial Summary Judgment and Motion to Dismiss Defendant's

---

[5] The defendant's FDUTPA counterclaim is a compulsory counterclaim arising
from the same subject matter as the complaint. Thus, the defendant does not need to
establish an independent basis for jurisdiction. See Marine Transp. Services Sea-
Barge Group, Inc. v. Python High Performance Marine Corp.,16 F.3d 1133, 1139 (11th
Cir. 1994), supra.

Counterclaim (DE# 9 at 7, 10/18/06). The plaintiff relies solely on Hapag-Lloyd, A.G. v. Levine, 473 F.Supp. 991, 993 (N.D. Ill. 1979). Id. In Hapag-Lloyd, the plaintiff, a common carrier, brought suit to recover unpaid freight against the defendant, an importer and exporter, pursuant to a contract of carriage. The court granted summary judgment on the unpaid freight and issued a stay of the defendant's antitrust counterclaim pending a determination by the FMC.

The defendant distinguishes Hapag-Lloyd by noting that there are no antitrust claims in the instant case. See Defendant's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment and motion to Dismiss Defendant's Counterclaim (DE# 26 at 8, 12/7/06).

Paragraph 21 of the Terms and Conditions of the bills of lading requires the defendant to bring certain claims against the plaintiff before the FMC. Paragraph 21 provides, in part:

> Freight, demurrage, and other charges ... shall be paid in full regardless of any claim by [the defendant] that a tariff applies other than that under which [the plaintiff] has assessed charges, or that the charges are unreasonable or unlawful under the applicable law. **Any such claim shall instead be pursued by a separate action before the Federal Maritime Commission, Interstate Commence Commission, or other agency where the tariff sought to be applied by [the plaintiff] has been filed.**

See Terms and Conditions ¶ 21, attached as Exhibit 3 to the Affidavit of Gary Killmer (DE# 9, 10/18/06) (emphasis added).

A plain reading of ¶ 21 shows that the term "[a]ny such claim" refers to a claim "that a tariff applies other than that under which [the plaintiff] has assessed

15

charges, or that the charges are unreasonable or unlawful under the applicable law" as stated in the preceding sentence. The defendant's counterclaims for misrepresentation, fraud and a violation of the FDUTPA do not attack the charges assessed by the plaintiff and thus should not be submitted to the FMC.

The Court notes that the Terms and Conditions provisions of the Bills of Lading are printed in <u>fine</u> <u>print</u>. In fact, the copy filed by the plaintiff was retyped in a larger font to be legible. Because bills of lading evidence the contract of carriage and are prepared by the carrier, it is well settled that the terms of the bills of lading are strictly construed against the carrier. <u>See</u> <u>The Caledonia</u>, 157 U.S. 124, 137 (1895) (emphasizing that courts construe a bill of lading strictly against the party that drafted it).

For the foregoing reasons, the plaintiff's Motion to Dismiss Defendant's Counterclaims on the basis that they should be brought before the FMC is **DENIED**.

**D.     Motion for Summary Judgment on the Plaintiff's Claim to Recover Unpaid Freight and Related Charges**

The plaintiff seeks summary judgment on its claim to recover unpaid freight and related charges for the transportation of the defendant's cargo from the United States to Central America. <u>See</u> Plaintiff's Motion for Partial Summary Judgment and Motion to Dismiss Defendant's Counterclaim (DE# 9 at 2, 10/18/06). The plaintiff claims it is entitled to these sums because it has performed all of the services described in the invoices/bills of lading including

16

delivering the cargo. <u>See</u> Affidavit of Gary Killmer at ¶ 10. The plaintiff further

claims that the affirmative defenses and counterclaims raised by the defendant

do not preclude summary judgment on the unpaid freight and related charges.

<u>See</u> Plaintiff's Motion for Partial Summary Judgment and Motion to Dismiss

Defendant's Counterclaim (DE# 9 at 6, 10/18/06). According to the plaintiff,

"[e]ven assuming that [the plaintiff] owes some amount to [the defendant] . . . any

such liability is independent and legally irrelevant to [the defendant's] obligation

to pay its freight bills." <u>Id</u>. The plaintiff relies on the "basic policy of admiralty law

that carriers be paid for their services." <u>Hapag-Lloyd</u>, 473 F.Supp. at 993. The

defendant seeks to avoid the Service Contracts and the bills of lading claiming

they were procured by fraud.

      The right to freight arises from the shipper's agreement to pay for the

carriage. The instant bills of lading are maritime contracts. <u>See</u> <u>Norfolk Southern</u>

<u>Railway Co. v. Kirby</u>, 543 U.S. 14, 27 (2004) (holding that "so long as a bill of

lading requires a substantial carriage of goods by sea, its purpose is to

effectuate maritime commerce – and thus it is a maritime contract"). "[M]aritime

courts require of all parties to a maritime contract the utmost good faith before

they can assert rights under the contract." <u>Treasure Salvors, Inc. v. Unidentified</u>

<u>Wrecked and Abandoned Sailing Vessel</u>, 459 F.Supp. 507 (S.D. Fla. 1978)

<u>reversed in part on other grounds</u> <u>Fla. Dep't of State v. Treasure Salvors</u>, 458

U.S. 670 (1982).

17

The cases cited by the plaintiff are inapplicable to our case because each of those cases involved the right to setoff based on damage to cargo, cargo shortage or contamination. See Genetics International v. Cormorant Bulk Carriers, Inc., 877 F.2d 806 (9th Cir. 1989) (shipper sought offset for damage to cargo); Metallgesellschaft A.G. v. M/V Captain Constante, 790 F.2d 280, 283 (2d Cir. 1986) (short delivery and fuel contamination); Greenstone Shipping Co., S.A. v. Transworld Oil, Ltd, 588 F.Supp. 574 (D. Del. 1984) (shipper alleged cargo shortage, contamination and damage); Puerto Rico Marine Management, Inc. v. Ken Penn Amusement, Inc., 574 F.Supp. 563 (W.D. Pa. 1983) (damage to shipment). None of the cases cited by the plaintiff attack the validity of the shipping contract. By contrast, the defendant seeks to avoid the Service Contracts on the grounds that they were procured through fraud or misrepresentation.

The plaintiff further argues that it is entitled to summary judgment notwithstanding the defendant's fraud and misrepresentation counterclaims because the defendant discovered the fraud in March 2006 and continued to ship cargo until April 24, 2006. See Plaintiff's Reply Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment and Motion to Dismiss Defendant's Counterclaim (DE# 30, 12/14/06). According to the plaintiff, this action by the defendant ratified or affirmed the debt. Id.

The defendant responds that affirmation or ratification has not occurred because it has refused to make payments that would have been due after the

18

fraud discovery. See Defendant's Response to Plaintiff' Reply Memorandum in

Support of its Motion for Summary Judgment (DE# 31 at 1, 12/21/06). Moreover,

the defendant argues that its "shipments with [the plaintiff were] pursuant to the

[S]ervice [C]ontract[s] . . . which predicates the manner in which [the defendant]

sold services to its own customers." Id. at 1-2. Thus, according to the defendant

"it was impossible for [the defendant] to stop those shipments that had been

previously arranged or in transit in reliance of the [p]laintiff's misrepresentations

in procuring the contract." Id. at 2.

The Court finds that there are genuine issues of material fact as to

whether the defendant's actions affirmed or ratified the Service Contracts.

Although the defendant learned of the fraud in March 2006 and continued its

shipments until April 24, 2006, there are factual issues concerning whether the

defendant could have immediately stopped the shipments or acted within a

reasonable time upon discovering the fraud. Thus, the plaintiff has not met its

burden on summary judgment. Accordingly, Plaintiff's Motion for Partial

Summary Judgment is **DENIED**.

**E.     The Plaintiff's Claim for Attorney's Fees**

The plaintiff's attorney's fee claim is based on ¶ 21 of the Terms and

Conditions in the Bills of Lading which provides that the plaintiff "shall be entitled

to recover all costs of collection, including reasonable attorneys fees and

expenses." See Terms and Conditions attached as Exhibit 3 to the Affidavit of

Gary Killmer (DE# 9, 10/18/06). The plaintiff's claim for attorney's fees is not ripe

for consideration. If the defendant ultimately prevails in voiding the Services

Contracts and Bills of Lading, the plaintiff may not be able to enforce the

attorney's fee provision. Since the Court has denied Plaintiff's Motion for

Summary Judgment, the plaintiff's request for attorney's fees, is also **DENIED** at

this time.

In accordance with the foregoing, it is

**ORDERED AND ADJUDGED**, that Plaintiff's Motion for Partial Summary

Judgment and Motion to Dismiss Defendant's Counterclaim (DE # 9, 10/18/06) is

**DENIED**.

**DONE and ORDERED** in Chambers at Miami, Florida, this **6th** day of

February, 2007.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
All counsel on record